IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:12-CV-388-D

| | | |
|---|---|---|
| BRENDA JEAN SLOAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Brenda Jean Sloan ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 26, 28). Both parties filed memoranda in support of their respective motions (D.E. 27, 29) and plaintiff filed a reply (D.E. 30). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 31). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416

## I.  BACKGROUND

### A.  Case History

Plaintiff filed applications for DIB and SSI on 8 April 2008, alleging a disability onset date of 30 April 2007.  Transcript of Proceedings ("Tr.") 23. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed.  Tr. 23.  On 9 June 2010, a hearing was held before an Administrative Law Judge ("ALJ").  Tr. 37-93.  In a written decision dated 15 October 2010, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI.  Tr. 23-32.  Plaintiff timely requested review by the Appeals Council.  Tr. 18-19.  The Appeals Council denied the request for review on 30 April 2012.  Tr. 1-4.  At that time, the decision of the ALJ became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  Plaintiff commenced this proceeding for judicial review on 28 June 2012, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)). [2]

### B.  Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual

---

[2] Plaintiff submitted additional applications for DIB and SSI subsequent to the instant applications, again alleging the onset of disability on 30 April 2007. (*See* 23 Mar. 2012 Decisions (D.E. 27-2)). On 23 March 2012, the Social Security Administration allowed the applications, but found that plaintiff's disability did not begin until 8 June 2011, when she became 54.5 years old. (*See id.*; Tr. 30 ¶ 7). In certain circumstances, the allowance of benefits after a denial on a prior application can warrant remand in the appeal from the denial. *See, e.g., Pulley v. Colvin*, No. 4:11–CV–85–FL, 2013 WL 2356124, at *4 (E.D.N.C. 29 May 2013) (collecting cases). The court declines to decide whether remand is warranted on this basis here given the recommended disposition on other grounds, and it expresses no opinion on this issue. The Commissioner should, however, address the subsequent decision in the remand proceedings.

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B).  The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.  . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

## C. Findings of the ALJ

Plaintiff was 50 years old on the alleged onset date of disability and 53 years old on the date of the administrative hearing. Tr. 31 ¶ 6; 42. She has a high school education and some community college (Tr. 31 ¶ 8; 43) and past relevant work as the owner and operator of an in-store demonstration business (Tr. 30 ¶ 5).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 25 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: fibromyalgia, obesity, mild degenerative disc disease, diabetes, depression, and anxiety. Tr. 25 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 25 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work. Tr. 27 ¶ 5; *see* 20 C.F.R. §§ 404.1567(b) (definition of light work), 416.967(b) (same); *see also* Dictionary of Occupational Titles (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app.

C § IV, def. of "L–Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 8 July 2013).[3]

Specifically, he found that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently and sit, or stand or walk for 6 hours in an 8-hour workday, subject to the following limitations: being able to alternate positions at will; climbing ladders only occasionally; avoiding concentrated exposure to hazards; performing only simple, routine, and repetitive tasks; and avoiding sustained contact with the general public. Tr. 27 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was unable to perform any past relevant work. Tr. 30 ¶ 6. At step five, the ALJ relied on the testimony of a vocational expert ("VE") and found that there were jobs that exist in significant numbers in the national economy that plaintiff could perform, including the occupations of officer helper, router, and checker. Tr. 31 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 32 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at

---

[3] "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401. When, as here, the Appeals Council accepts into the record evidence relating to the alleged period of disability not presented to the ALJ, the court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Wilkins v. Sec., Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

B.    **Plaintiff's Contentions**

Plaintiff contends that the ALJ erred with respect to, among other aspects of her decision, the weight accorded the opinion of plaintiff's primary care physician, the analysis of her credibility, the determination of her RFC, nonapplication of Medical-Vocational Guideline

201.14[4] to her, and the determination on the availability of jobs to her. Many of plaintiff's contentions are based on the ALJ's assessment of her fibromyalgia. Because the court finds that issue to be dispositive of this appeal, the court's analysis will focus on it.

### C.  ALJ's Assessment of Plaintiff's Fibromyalgia

A key portion of the ALJ's discussion of plaintiff's fibromyalgia appears in her analysis of plaintiff's credibility. While the ALJ found that "[plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," she determined that plaintiff's "allegations of functional restrictions are not fully credible." Tr. 30 ¶ 5. With respect to plaintiff's fibromyalgia specifically, the ALJ found:

> The claimant has been diagnosed with fibromyalgia with pain predominantly in her shoulders, arms and legs. However, she has not had any clinical findings of persistent tissue inflammation and she does not have any focal neurological deficits or any limitation of motion related to this condition. The record does not establish the trigger point findings necessary for the diagnosis of true fibromyalgia.

Tr. 30 ¶ 5.

Plaintiff contends that these findings are erroneous in several respects. The court agrees.

For example, the absence of findings of "persistent tissue inflammation" is not apparently a valid indicator of the existence or severity of fibromyalgia because fibromyalgia does not cause tissue inflammation. "Although fibromyalgia is often considered an arthritis-related condition, it is not truly a form of arthritis (a disease of the joints) *because it does not cause inflammation or damage to the joints, muscles, or other tissues*." National Institute of Arthritis and Musculoskeletal and Skin Diseases, What is Fibromylagia? (Aug. 2012),

---

[4] The Medical–Vocational Guidelines or grids, which are set out in 20 C.F.R. pt. 404, subpt. P, app. 2, are a set of rules that, when applied directly, specify a conclusion as to whether or not a claimant is disabled. *See generally* Medical-Vocational Guideline 200.00(a). They may also be used as a framework for decision making, as discussed below. The Medical-Vocational Guidelines are grouped by RFC for sedentary, light, medium, and heavy or very heavy work, respectively. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (e.g., none, unskilled, semiskilled, skilled, transferability of skills).

http://www.niams.nih.gov/Health_Info/Fibromyalgia/default.asp (last visited 8 July 2013) (emphasis added); *see also id.*, How Is Fibromyalgia Treated?, Nonsteroidal Anti-Inflammatory Drugs (NSAIDs) ("*Although inflammation is not a symptom of fibromyalgia*, NSAIDs also relieve pain." (Emphasis added)); Wolters Kluwer Health, Fibromyalgia Medications, Antiinflammatory drugs, UpToDate, http://www.uptodate.com/contents/fibromyalgia-beyond-the-basics?detectedLanguage=source=search_result&search=fibromyalgia&selectedTitle=7%7E 106&provider=noProvider (last visited 8 July 2013) ("Fibromyalgia does not cause tissue inflammation."). Accordingly, tissue inflammation is not recognized as a criterion for fibromyalgia in either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia ("1990 ACR Criteria")[5] or the 2010 ACR Preliminary Diagnostic Criteria for Fibromyalgia ("2010 ACR Preliminary Criteria").[6]

Consistent with the noninflammatory nature of fibromyalgia, tissue inflammation is not recognized generally, if at all, as a symptom of fibromyalgia in the social security case law addressing that disorder. Further, Social Security Ruling 12-2p adopts as standards for the diagnosis of fibromyalgia the 1990 ACR Criteria and 2010 ACR Preliminary Criteria, which, as indicated, do not include tissue inflammation. Soc. Sec. Ruling 12-2p, 2012 WL 3104869, at 2 § II (25 July 2012). That ruling does not otherwise recognize tissue inflammation as a symptom of fibromyalgia. While Social Security Ruling 12-2p was issued after the ALJ's decision in this case, both the 1990 ACR Criteria and 2010 ACR Preliminary Criteria predate the decision.

Where an ALJ misunderstands a claimant's fibromyalgia, such misunderstanding can be a ground for remand. *See, e.g., Sarchet v. Chater*, 78 F.3d 305, 307, 309 (7th Cir. 1996). What

---

[5] Frederick Wolfe et al., *The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee*, 33 Arthritis and Rheumatism 160 (Feb. 1990).

[6] Frederick Wolfe et al., *The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity*, 62 Arthritis Care & Research 600 (May 2010).

the *Sarchet* court said about the ALJ's misunderstanding there regarding joint swelling as a symptom of fibromyalgia could be said about the ALJ's misunderstanding here regarding tissue inflammation: "Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced." *Id.* at 307.

The ALJ's finding that the record does not establish the trigger point findings used to diagnose fibromyalgia, pursuant to the 1990 ACR Criteria, also appears to be incorrect. To satisfy this portion of the 1990 ACR Criteria, application of about 9 pounds of pressure to 18 tender or trigger points on the body must produce pain in at least 11 of the points. *See* Soc. Sec. Ruling 2012 WL 3104869, at *3 ¶ 2. The record contains three office visit notes by plaintiff's primary care physician, Eva Manitius, M.D., in which she found plaintiff to have more than 11 painful, or positive, trigger points. Tr. 658 (12 positive trigger points; 6 July 2009), 661 (12 positive trigger points; 4 Jan. 2010), 663 (14 positive trigger points; 3 Mar. 2010); *see also* Tr. 636 § I (finding in Dr. Manitius's 10 May 2010 medical source statement that plaintiff had pain in 11 or more pressure points). On another office visit, Dr. Manitius reported 10 positive trigger points. Tr. 650 (4 Jan. 2008). The Commissioner herself points to these office visit findings in her brief. (Comm'r's Mem. 10). If by her determination on the trigger point evidence the ALJ had in mind some deficiency other than plaintiff not exhibiting the requisite number of positive trigger points, she did not clearly indicate what that deficiency might be, and none is apparent.

Thus, the ALJ cited four specific medical findings as undermining plaintiff's credibility regarding her allegations about fibromyalgia—lack of persistent tissue inflammation, lack of any focal neurological deficits, lack of limitation of motion, and lack of the requisite trigger point findings. Two of the four, that is, half, appear to be baseless.

Moreover, the ALJ speaks of the lack of trigger point findings necessary for the diagnosis of "true fibromyalgia." Tr. 30 ¶ 5. The clear implication is that the ALJ believes that plaintiff does not actually have fibromyalgia at all or that she has it in some attenuated, less than full-blown form. The "true fibromyalgia" finding appears to conflict with the ALJ's prior finding that fibromyalgia is among plaintiff's severe impairments. Tr. 25 ¶ 3. The decision nowhere reconciles this apparent conflict.

The Commissioner rightly points out that the diagnosis of a condition does not itself establish the severity of the condition or its limiting effects. *See, e.g., Higgs v. Bowen*, 880 F. 2d 860, 863 (6th Cir. 1988); *Stone v. Finch*, 434 F.2d 364, 366 (4th Cir. 1970). But in the context in which the ALJ here made these findings about plaintiff's fibromyalgia—assessment of plaintiff's credibility—the clear gravamen of the ALJ's findings is that the severity and limiting effects of plaintiff's fibromyalgia are not as great she alleges.

The errors by the ALJ in her findings regarding fibromyalgia obviously undermine her determination regarding plaintiff's credibility. But they also taint other portions of her decision. For example, they draw into question the weight she gave the opinion of Dr. Manitius. Dr. Manitius opined that plaintiff's symptoms of fibromyalgia, in combination with her other conditions, give her a very limited RFC. *See* Tr. 639-40 § VI; 30 ¶ 5. The ALJ gave this opinion "minimal weight," in part, on the grounds that "it is not supported by the physician's treatment notes." Tr. 30 ¶ 5. The ALJ's apparent lack of awareness of the trigger point findings by Dr. Manitius may form part of the basis for this determination.

As a further example, the ALJ's not fully crediting plaintiff's allegations regarding fibromyalgia (*see* Tr. 30 ¶ 5) forms part of the basis for her determination that plaintiff had the RFC to perform light work subject to various limitations (*see* Tr. 27-30 ¶ 5). Significantly, based

on the determination that plaintiff could perform work at the light exertional level, the ALJ used Medical-Vocational Guideline 202.14 as a framework for her decision making at step five of the sequential analysis. *See* Tr. 31 ¶ 10; *see generally* Medical-Vocational Guideline 200.00(e)(2) (providing for use of the Guidelines as framework when a claimant has both exertional and nonexertional limitations); Soc. Sec. Ruling 83-14, 1983 WL 31254 (1983) (same). That guideline provides for a determination of not disabled. Medical-Vocational Guideline 202.14.

Had the ALJ found plaintiff capable of sedentary work[7]—the exertional level immediately below light work—the appropriate Medical-Vocational Guideline for use as a framework, assuming no other changes, would have been Medical-Vocational Guideline 201.14. It provides for a determination of disabled. Medical-Vocational Guideline 201.14. Notably, Dr. Manitius opined that plaintiff was limited to work at less than the sedentary level. Tr. 640-41 § VI. 1-7. Thus, in this specific regard and, again, assuming use of the Medical-Vocational Guidelines solely as a framework,[8] the errors by the ALJ regarding plaintiff's fibromyalgia have the potential to be outcome determinative.

The court concludes that the errors by the ALJ regarding her assessment of plaintiff's fibromyalgia preclude the court from finding that the ALJ's decision is supported by substantial evidence and based on the proper legal standards. This case should accordingly be remanded for further consideration by the Commissioner. The court expresses no opinion on the weight to be

---

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); *see also* DOT, App. C § IV, def. of "S–Sedentary Work."

[8] Although plaintiff argues that Medical-Vocational Guideline 201.14 should be applied directly, not simply as a framework, so as to direct a determination of disabled, the court does not reach that issue given the recommended disposition of this appeal on other grounds.

accorded the evidence of fibromyalgia in this case. That is a matter left for the Commissioner to resolve.

## III.    CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 26) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 28) for judgment be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 8th day of July 2013.

James E. Gates
United States Magistrate Judge